UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIRIPHONE LOUANGMILITH,<br><br>                               Petitioner,<br><br>v.<br><br>KRISTI NOEM; PAMELA JO BONDI; TODD M. LYONS; JESUS ROCHA; and CHRISTOPHER LaROSE,<br><br>                              Respondents. | Case No.: 25-cv-2502-JES-MSB<br><br>**ORDER:**<br><br>**(1) DENYING IN PART AND GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS; and**<br><br>**(2) DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT**<br><br>**[ECF Nos. 1, 3]** |

     Before the Court is Petitioner Siriphone Louangmilith's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1), and accompanying Motion for Temporary Restraining Order ("TRO"). The parties submitted briefing on these matters, and the Court held a hearing on October 1, 2025. ECF Nos. 1, 2, 4, 9. For the reasons set forth below and at the hearing, the Court **DENIES IN PART** and **GRANTS IN PART** the writ of habeas corpus, and **DENIES AS MOOT** the motion for TRO.

//

## I. BACKGROUND

Petitioner is a citizen of Laos who is currently detained at the Otay Mesa Detention Center ("OMDC"). ECF No. 1 at 3. He alleges that he entered the United States in 1987 as a refugee and subsequently became a lawful permanent resident. *Id.* In 2005, he was convicted of burglary under California Penal Code § 459. *Id.*; ECF No. 1-2 ¶ 2. Due to the criminal conviction, he was put into removal proceedings and ordered removable by an Immigration Judge ("IJ"). *Id.* After he was ordered removed, Petitioner alleges that he was detained by U.S. Immigration and Customs Enforcement ("ICE") and they tried to remove him to Laos without success for three months. *Id.* ¶ 3. Thus, he was released on an order of supervision. *Id.* After his release, Petitioner alleges that he remained in the United States for 17 years. *Id.*

On July 23, 2025, Petitioner was arrested by ICE and brought to OMDC. *Id.* ¶ 4. He alleges that he was finally told on September 17, 2025, that ICE had obtained travel documents to effectuate his removal back to Laos. *Id.*

Petitioner alleges that recently, he had been in contact with Federal Defenders, who now represent him in this case. *Id.* ¶ 5. After investigation, he alleges that they investigated his underlying removal case and discovered a ground to seek reopening of his removal proceedings. *Id.* Specifically, he alleges that the crime he was convicted of and formed the basis of removal has since been ruled to never be an aggravated felony. *Id.* (citing *Descamps v. United States*, 570 U.S. 254, 265 (2013)). ECF No. 1 at 3. He alleges that he filed a motion to reopen his removal proceedings on this ground on September 19, 2025. ECF No. 1-2 ¶ 6.

Based on the above, Petitioner brings three claims: (1) procedural due process prevents Petitioner's removal during the pendency of his motion to reopen his removal proceedings; (2) ICE failed to comply with its own procedures to re-detain him and he should be released; and (3) ICE cannot remove him to a third country without adequate notice and an opportunity to be heard. ECF No. 1 at 6-11.

//

## II. LEGAL STANDARD

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts, and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A prisoner prevails in her petition for writ of habeas corpus if she shows that "[she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner . . . .").

## III. DISCUSSION

### A. Jurisdiction

Respondents first argue that this Court lacks subject matter jurisdiction to hear this petition under 8 U.S.C. §§ 1252(g) and (b)(9). ECF No. 7 at 10-13.

The Court's jurisdiction to hear writs of habeas corpus from immigration detainees depends on the type of claims at issue. Congress has granted the Attorney General the power to "commence proceedings, adjudicate cases, and execute removal orders" against aliens, and forbidden judicial review of "any cause or claim by or on behalf of any alien arising from" such decisions. 8 U.S.C. § 1252(g). District courts also may not review on habeas "questions of law and fact, including interpretation and application of constitutional and statutory decisions, arising from any action taken or proceeding brought to remove an alien." 8 U.S.C. § 1252(b)(9). In interpreting "arising under" in both statutes, the Supreme Court has cautioned against "expansive interpretations" that would cause "staggering results" like rendering prolonged detention claims unreviewable. *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482-483 (1999).

In support of Petitioner's position that this Court has jurisdiction to grant him the relief of staying his removal pending his motion to reopen, he cites to the case *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1157 (C.D. Cal. 2018). The case was a class action filed by

Cambodian citizens who were subject to orders of removal due to prior criminal convictions, but were subsequently released from custody when Cambodia refused to accept them. *Id.* at 1150. Years later, petitioners were re-detained by ICE and they filed suit in federal court, asking for a stay of their deportations so they could reopen their immigration proceedings and challenge their removal orders. *Id.* at 1151. The government argued that §§ 1252(a)(5), 1252(b)(9), and 1252(g) barred the district court from exercising jurisdiction in that case. *Id.* at 1157-58. The court reviewed Ninth Circuit precedent, stating that district courts have jurisdiction if "petitioners do not directly challenge their orders of removal, but rather assert a due process right to challenge the orders in the appropriate court." *Id.* at 1158. After reviewing cases, the court held that petitioners did not "directly challenge the bases for their orders of removal" but instead seek "an opportunity to challenge the removal orders." *Id.* at 1159. Thus, the court appeared to cast their request as a due process challenge to have their "day in court." *Id.*

After *Chhoeun* was decided in 2018, district courts have been split on following its conclusion. *Beltran Prado v. Nielsen*, 379 F. Supp. 3d 1161, 1167 (W.D. Wash. 2019) ("The Ninth Circuit, however, has not addressed the issue here: whether district courts have jurisdiction to stay a noncitizen's removal pending resolution of a motion to reopen. District courts in this circuit are split."); *Abdelsalam v. Barr*, No. EDCV202608JGBKKX, 2021 WL 518367, at *3 (C.D. Cal. Jan. 8, 2021) (recognizing same split and collecting cases); *compare Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1142202, at *15 (N.D. Cal. Mar. 2, 2018) (holding district court has jurisdiction to hear a habeas petition requesting a stay of removal pending a motion to reopen) *with Probodanu v. Sessions*, 387 F. Supp. 3d 1031, 1042 (C.D. Cal. 2019) (holding no jurisdiction even where "Petitioners have also filed, and still have the opportunity to file, motions to reopen their immigration proceedings").

However, in support of their position that this court does not have jurisdiction to grant a motion to stay removal pending adjudication of Petitioner's motion to reopen, Respondents cite to a 2022 Ninth Circuit case, *Rauda v. Jennings*, 55 F.4th 773 (9th Cir.

2022). In *Rauda*, the petitioner was found removable by an IJ who also denied him relief under the Convention Against Torture ("CAT"). *Id.* at 776. He unsuccessfully appealed to the BIA and the Ninth Circuit. *Id.* Subsequently, he moved to have the BIA reopen his case for consideration of new developments for his CAT claim. *Id.* He petitioned the BIA for an emergency stay with his motion to reopen was pending but was denied. *Id.* He then filed a § 2241 petition with the federal court. *Id.* Petitioner argued that refusing to stay his removal pending resolution of his motion to reopen "would deprive a noncitizen of his statutory right to file a motion to reopen." *Id.* at 777. The court there held that, despite this framing, Petitioner was challenging the execution of his removal order, which falls within § 1252(g)'s limitation of jurisdiction upon federal courts. *Id.* ("No matter how [Petitioner] frames it, his challenge is to the Attorney General's exercise of his discretion to execute [Petitioner's] removal order, which we have no jurisdiction to review."). The court emphasized that the motion to reopen had already been filed and is currently pending before the BIA; that once the BIA decides that motion, Petitioner would be able to appeal that decision to the Ninth Circuit. *Id.* Thus, the court appeared to conclude that, in that procedural circumstance, there is the opportunity provided to let the process proceed. *Id.*

In light of *Rauda*, the Court finds that it precludes jurisdiction over Petitioner's claim seeking a stay of his removal pending adjudication of his motion to reopen given the almost identical procedural posture of the case. *Rauda* seems to stand for the proposition that a due process violation cannot *solely* rest on the argument that removal must be prevented so that a motion to reopen can play out in immigration court. This appears to be the main argument supporting Petitioner's first claim, under which he seeks a stay of his removal pending adjudication of this motion to reopen.[1] Accordingly, the Court finds that it does

---

[1] During the hearing on this matter, Petitioner suggested that a separate procedural due process claim may lay also in the manner that he was re-detained this time by ICE. Petitioner described the prejudice as the lack of process there deprived him of an opportunity to avail himself to the administrative procedures in place to protect them from erroneous removals, including an opportunity to contact attorneys. However, the relief requested under this Claim does not flow from this alleged constitutional violation. This due process violation is the basis of relief that Petitioner seeks in his second claim and the Court will address

not have jurisdiction to hear Petitioner's first claim and **DENIES** the petition for that claim for lack of jurisdiction.

However, as to Petitioner's second and third claims, the Court finds that application of this legal framework reaches a different result. Petitioner's second claim addresses the process which ICE used to re-detain him, arguing that it violated his due process rights. Petitioner's third claim regarding removal to a third country also implicates due process rights, specifically whether he can be removed to a third country without notice and an opportunity to be heard. Since these claims implicate procedural due process issues, the Court finds that it does have jurisdiction to address them and will do so below.

### B.     Claim 2

Petitioner's second claim challenges the way that ICE re-detained him. ECF No. 1 at 8. Petitioner argues that ICE failed to comply with its own regulations, and argues that this is a due process violation. *Id.* at 8-10. In support of this position, Petitioner cites to a second decision in the *Chhoeun* case. In the second order, the court evaluated whether the petitioners should be released from custody due to procedural due process violations during their redetention by ICE. *Nak Kim Chhoeun v. Marin*, 442 F. Supp. 3d 1233, 1247 (C.D. Cal. 2020). The court held that procedural due process was violated and enjoined the government from redetention of any class member without the appropriate notice first. *Id.* Petitioner makes a similar argument here, and states the prejudice he faces as follows: it deprived him of an opportunity to avail himself to the administrative procedures in place to protect them from erroneous removals, including an opportunity to contact attorneys. ECF No. 1 at 10.

The unique factual circumstances of this case differentiates it from *Chhoeun*. The government has represented to the Court that it has now obtained travel documents for Petitioner to be removed to his home country, Laos. ECF No. 7-1 ¶ 11. A declaration from

---

it in that part of the order.

a deportation officer states that ICE's Enforcement and Removal Operations ("ERO") obtained the travel documents and Petitioner is expected to be placed on the next charter flight to Laos. *Id.* The date for the flight has not yet been scheduled but is expected to occur "soon." *Id.* Thus, at this point, there is a significant likelihood that Petitioner will be removed to his home country in the imminent future. Moreover, by Petitioner's own admission, he was able to file a motion to reopen with help with counsel, notwithstanding his detention. ECF No. 1 at 4.

Thus, the unique factual circumstances here as a practical matter obviates the primary relief that Petitioner seeks with this claim. The petition for writ of habeas corpus is **DENIED WITHOUT PREJUDICE** on this claim.[2]

### C.   Claim 3

Petitioner's third claim is that ICE should be prevented from removing him to a third country without adequate notice and an opportunity to be heard. Respondents argue that this situation is not ripe for adjudication because ICE is not seeking to remove Petitioner to a third country. ECF No. 7 at 8-9. Petitioner responds that ICE's alleged procedure of removing individuals to a third country without notice and opportunity to be heard is why courts have rejected similar arguments by the government that such claims are speculative and unripe—by the time they are ripe by the government's argument, it will be too late for the individuals to meaningfully challenge the removal. ECF No. 9 at 8 (citing *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 389 (D. Mass. 2025)).

At least one district court has rejected the kind of argument that Respondents make here. In *Nguyen v. Scott*, Respondents made a similar representation that they were only seeking to remove the petitioner to his home country of Vietnam and stipulated that they would not attempt to remove him to any other country. No. 2:25-CV-01398, 2025 WL

---

[2] This denial is without prejudice to Petitioner refiling a new petition in the event that his expected removal to Laos is not effectuated in the immediate manner represented by the government to this Court and his detention is prolonged further.

2419288, at *27 (W.D. Wash. Aug. 21, 2025). The court stated that "the Ninth Circuit has found such voluntary promises insufficient" to eliminate the potential irreparable injury that petitioner could face if the promise was withdrawn, particularly in light of the underlying allegations that third party removals were being conducted rapidly and without an opportunity for process. *Id.* at *27-28.

Thus, on balance, the Court is more persuaded by Petitioner's arguments in spite of the government's representations, and **GRANTS** the petition on this claim.

## IV.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's writ of habeas corpus as follows:

1) Petitioner's first claim seeking a stay of his removal pending adjudication of his motion to reopen is **DENIED**;

2) Petitioner's second claim seeking immediate release from detention is **DENIED WITHOUT PREJUDICE**; and

3) Petitioner's third claim seeking to prohibit his removal to a third country without notice and opportunity to be heard is **GRANTED**. The Court **ORDERS** that Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a country other than Laos without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV-25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025).

//
//
//
//
//
//

Because the Court has ruled on Petitioner's underlying writ of habeas corpus, the motion for TRO is **DENIED AS MOOT**.

    **IT IS SO ORDERED.**

Dated: October 9, 2025

_____
Honorable James E. Simmons Jr.
United States District Judge